**In re Eve ROSAHN, Civil Contemnor.**

**No. M 11–188 (DNE).**

United States District Court,
S.D. New York.

Nov. 23, 1982.

Eve Rosahn, pro se.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for U.S.; Stacey J. Moritz, Asst. U.S. Atty., New York City, of counsel.

MEMORANDUM OPINION

EDELSTEIN, District Judge:

Eve Rosahn ("Rosahn") has applied to this court to vacate an order adjudicating her in civil contempt on February 26, 1982 for her failure to supply the grand jury with subpoenaed, physical exemplars. Her application is based on due process grounds. She insists that because of a principle of non-collaboration she will never cooperate with the grand jury thereby making her imprisonment not coercive but punitive with no reasonable relationship to the purpose of obtaining the subpoenaed items. In the alternative she applies for the court to

release her pursuant to the court's discretionary power to set the period of incarceration for contempt.

On October 20, 1981 a Brinks armored truck was robbed by several armed robbers. In the course of the robbery and escape attempt, one Brinks guard and two police officers were killed. A Honda automobile in which some of the participants fled was registered to Rosahn. A red van used in the robbery had been rented from an agency located near Rosahn's residence by a woman using false identification, but meeting Rosahn's description. Investigators found hair strands in the van, in the car, and on other evidence seized at the sites of the robbery and escapes. In addition, books apparently related to the robbery and seized during the investigation contain handwriting of persons as yet unidentified. A grand jury sitting in the Southern District of New York investigating this crime served Rosahn on November 6, 1981 with a subpoena *duces tecum* returnable November 9, 1981, requiring her to supply the grand jury with photographs, fingerprints, handwriting exemplars and hair samples.

On November 9, 1981 Rosahn appeared before the grand jury and refused to supply the subpoenaed items. She later refused to comply with an order entered the same day by Judge Cooper directing her to comply with the grand jury demand. Judge Cooper then held a contempt hearing (closed to the public over Rosahn's objections in order to keep grand jury material secret), adjudicated Rosahn in contempt and ordered her confined under 28 U.S.C. § 1826. The court of appeals subsequently found that this closed hearing violated Rosahn's right to due process and remanded the case for a rehearing on the issue of contempt. 671 F.2d 690 (2nd Cir.1982). On January 29, 1982 Rosahn was released from her incarceration for contempt entered by Judge Cooper.

On February 25, 1982, on a motion by the government, this court held an open hearing on contempt. After both sides were heard, this court adjudicated Rosahn in civil contempt and ordered her incarcerated for eighteen months or until the expiration of the term of the grand jury whichever occurred first.[1] Rosahn appealed from the order of this court on two grounds: (1) just cause exists for not complying with a grand jury subpoena that is prosecuted by the government for the sole purpose of imprisoning or harassing political activists without giving them the benefit of trial, which she alleges is the situation here;[2] and, (2) Rosahn argued, the purpose of a contempt confinement is to coerce cooperation, hence when it becomes clear that a contemnor will never purge the contempt, the confinement has no reasonable purpose and violates the contemnor's due process rights.

In an opinion filed April 21, 1982, the court of appeals rejected both these arguments and affirmed the contempt adjudication. The court found no basis for the allegation that the government had constituted the grand jury for the purposes of harassment rather than criminal investigation, and the court held that courts cannot release contemnors on the ground that they will never purge themselves because such a policy would emasculate 28 U.S.C. § 1826.

Rosahn now brings the same argument back to this court.[3] She has been impris-

---

1. Rosahn cross-moved for a protective order. The court denied this motion on March 9, 1982, and Rosahn has not raised it again in this application.

2. Rosahn describes a documented history of illegal wiretaps and unlawful investigatory techniques directed against members of groups in which she is involved, the Black Liberation Army and The New Afrikan Independence Movement. It is shameful that law enforcement officers of our government resorted to these tactics out of an excessive fear of the danger these groups posed and out of an insuf-

ficient regard for our Constitutional safeguards. This is wholly apart from more serious, though unsupported, allegations of physical violence employed against these groups. Nevertheless, these circumstances, even as alleged, have only passing relevance to the issue of the validity of the current grand jury investigation.

3. Rosahn has also brought to the court's attention, by letter received November 22, 1982, the fact that on November 18, 1982 the grand jury with which she refuses to cooperate presented several indictments. Rosahn argues that the grand jury has finished its work and she should

oned an additional nine months; until June of 1982 she was confined under strict conditions, which are now lifted. See Rosahn Affidavit, pp. 10–11. She has submitted affidavits from friends and colleagues testifying to their belief that she will never cooperate with the grand jury investigation. She has submitted petitions calling for the termination of the grand jury proceedings signed by several hundred persons. The court has received telegrams and mailgrams from many cities around the country attesting to the belief of the senders that Rosahn will never cooperate with the grand jury investigation. Based on these testimonials of her steadfastness as a grand jury resister, Rosahn has applied to this court to order her release from confinement on the grounds that her imprisonment under section 1826 is punitive and has no coercive value.[4]

■ Under the relevant case law this court does not have the power to release contemnors, who are confined under section 1826, on the grounds that they will probably resist purging the contempt for the full eighteen months. Hence the further evidence that Rosahn submitted is not helpful to this court's decision.

The government is entitled to everyone's evidence. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). The people entrust the government with the duty of enforcing the law, and the government, in return, can compel coopera-tion with that effort. *In Re Grand Jury Investigation (Braun),* 600 F.2d 420, 422 (3d Cir.1979). The purpose of imprisonment for failure to cooperate with a grand jury is to coerce the witness to cooperate. *Braun, supra.* Contemnors hold the key and can open the jail door by meeting their responsibility. The cases cited by Rosahn emerge from state civil contempt adjudications where the period of confinement under state law was indefinite.[5] Where a confinement is indefinite, a court reviewing the case must at some point make a decision as to whether imprisonment is any longer serving a coercive purpose. In the case of confinement for contempt pursuant to section 1826, however, a contemnor can remain in jail for at most eighteen months. Congress has examined the needs of grand juries and the rights of witnesses and determined this to be an appropriate coercive period. As to a subject on which Congress has clearly articulated a rule, courts should eschew forming their own policies.

■ When a law is attacked on due process grounds, it is evaluated under a standard of reasonableness. *Gruner v. Superior Court of the State of California,* 429 U.S. 1314, 1315, 97 S.Ct. 7, 8, 50 L.Ed.2d 44 (Rehnquist, Circuit Justice 1976); *Braun, supra* at 427. In evaluating the reasonableness of section 1826 or of its application, no one can predict when a resister will convert. History books contain many exciting stories of surprise conversions. One must balance

---

be released. In the alternative she argues in the same letter that because she has not yet been indicted the grand jury is harassing her. Her first argument carries no weight because it stands on incorrect facts. According to the government's responsive letter dated November 23, 1982, the grand jury will continue to investigate the crimes involved and will consider indicting other suspects. Rosahn's second argument fares no better. The court of appeals found that Rosahn's allegation of harassment was without merit. The mere fact that she is not yet indicted does not change that finding.

4. Rosahn does not renew her argument that the grand jury in this case is harassing her and other political activists rather than investigating criminal activity. The civil contempt statute, which allows confinement for up to eigh-teen months without any criminal conviction, is subject to abuse, and courts must supervise that process to ensure that the grand jury is investigating genuine criminal activity and that the witness is sufficiently connected to that activity to form a basis for the contention that the witness has important information to offer the grand jury. In this case, however, the Court of Appeals has disposed of this issue finding no abuse. Rosahn has revealed no other facts since then, and Rosahn has not raised these grounds in her current application. Hence, the court makes no further finding with respect to this issue.

5. *Lambert v. State of Montana,* 545 F.2d 87 (9th Cir.1976); *In Re Faar,* 36 Cal.App.3d 577, 111 Cal.Rptr. 649 (1974); *Catena v. Seidl,* 68 N.J. 224, 343 A.2d 744 (1974).

the record of coerced cooperation, the needs of grand juries and the rights of prospective witnesses. Congress has done this in passing section 1826. *Braun, supra* at 425–27. The court has no basis to declare now that eighteen months is not a reasonable period or that in this case nine months is a more reasonable period than is eighteen. *Gruner, supra* at 1315, 97 S.Ct. at 8. Such is the law in the Second Circuit as discussed by the court of appeals in rejecting Rosahn's appeal of this court's February 26 order:

> We also reject Rosahn's claim that her incarceration for contempt is punitive rather than coercive because it is clear that she will persist in refusing to comply out of "principled non-collaboration with the grand jury." . . . Under [section 1826], she cannot be confined beyond eighteen months, a period that Congress regarded as coercive and not punitive.

*In Re Grand Jury Proceedings Involving Eve Rosahn,* No. 82 6046 (2d Cir. April 21, 1982) p. 4. Furthermore, this rule was previously established in this Circuit. *United States v. Dien,* 598 F.2d 743, 745 (2d Cir. 1979).[6]

This rule is a sound one. Every person confined for contempt does so for refusing to cooperate. Nearly everyone so confined would, at the outset of his confinement, swear that he would never cooperate if he thought such an affirmation would obtain his release. Contemnors would flood the courts with requests that would call on judges to delve into the minds of reluctant witnesses to determine the likelihood of future cooperation. Such an inquiry would involve little more than blind guesswork.

This procedure would encourage resistance and hamper the courts in the administration of justice. This court therefore rejects Rosahn's suggestion that it establish a coercive/punitive distinction rule in contempt law.

■ The court, however, has discretionary power in administering sentences for contempt citations. *See In Re Cueto,* 443 F.Supp. 857, 863 (S.D.N.Y.1978). *In Re Buonacoure,* 412 F.Supp. 904, 907 (E.D.P.A. 1976). Given the Congressional mandate courts should exercise this power only rarely, and the situation here does not justify the court's discretionary order of Rosahn's release. She is closely connected with the criminal activity—her car was used in the robbery, and there is evidence that she rented a van that was also used. She has indicated her support for the criminal activity being investigated.[7] Hair samples and written materials related to the criminal activities being investigated are as yet unidentified, but suspected to belong to Rosahn, so the subpoenaed items are directly relevant and important. Finally, samples of Rosahn's hair and handwriting samples can be obtained from no source other than Rosahn herself. Thus this court finds no basis for exercising its discretion to order Rosahn's release.

■ The government has conceded that, contrary to its vigorous assertions before the court of appeals, it does have major case fingerprints of Rosahn (Affidavit of Stacey Moritz, p. 7). Hence the court vacates that part of the court's order requiring Rosahn to submit to fingerprinting.

---

**6.** Other cases cited by Rosahn are not controlling. In *In Re Grumbles* Cr. No. 722–71 (D.N.J. Feb. 26, 1973) the court released a contemnor confined under section 1826, but a later Third Circuit decision eliminated any notion that a court in that circuit could do so on the grounds that the confinement had altered from a coercive to a punitive nature. *In Re Grand Jury Investigation (Braun),* 600 F.2d 420, 427 (3d Cir.1979): "we are reluctant to conclude, in the absence of unusual circumstances that . . . confinement for civil contempt that has not yet reached the eighteen-month limit has nonetheless lost its coercive impact and become puni-

tive." A footnote indicated that "unusual circumstances" involved something like non-cooperation based on a reasonable and objective fear of death or maiming. *Braun, supra* n. 25 at 427.

**7.** To cite merely one example, Rosahn continues to label those who robbed the Brinks truck "combatants" rather than criminals. This sort of characterization, which fills Rosahn's papers, indicates that Rosahn still refuses to withhold her support of these activities for the criminal actions they are.

Furthermore, this is the second error of this sort that the government has made in this case. At the grand jury the government maintained that it had no photograph of Rosahn, but conceded in argument before the court of appeals that it did. The court accordingly vacated that part of the contempt order requiring Rosahn to submit to photographing. As the grounds for contempt narrow, this court becomes concerned. To hold a contemnor, who is currently not charged with any crime,[8] in jail for eighteen months for her refusal to supply items already in the government's possession would be a travesty of justice.[9] To avoid any further errors, this court hereby orders the United States Attorney and any federal agencies involved in this investigation to search all their relevant files thoroughly for the subpoenaed items and to report to this court on the efforts made and whether any of the items were found. The government is further ordered to complete this search and report within one week from the entering of this order, even if it must proceed with this task twenty-four hours a day.

The applicant contemnor's motion is in part granted and in part denied without prejudice to renew this motion if the search ordered by this court reveals that the government possesses all the outstanding subpoenaed items.

SO ORDERED.

---

8. State charges against Rosahn in connection with the robbery have been dismissed.

9. Rosahn asserted before the court of appeals and maintains before this court that the government possesses all the subpoenaed items. See Appellant's brief before the court of Appeals, pp. 15–16; *In Re Eve Rosahn*, M 18–188, Transcript of hearing on October 29, 1982, p. 6.