**In re Eve ROSAHN, Civil Contemnor.**

**M 11–188 (DNE).**

United States District Court,
S.D. New York.

Jan. 13, 1983.

Eve Rosahn, pro se.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the U.S.; Stacey J. Moritz, Asst. U.S. Atty., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

Eve Rosahn ("Rosahn") has renewed her application to have this court vacate its February 26, 1982 order adjudicating her in civil contempt for failing to supply the grand jury with subpoenaed, physical evidence, *i.e.,* fingerprints, hair samples, handwriting exemplars and photographs.

On November 23, 1982 this court issued a memorandum opinion and order granting in part and denying in part Rosahn's motion to vacate the order of contempt, 551 F.Supp. 505. (The "November 23 Opinion"). The court rejected Rosahn's due process arguments that she should be released: (1) because the incarceration had become punitive rather than coercive; and, (2) because the court should exercise its discretion to release her as she had demonstrated that she would never cooperate with the grand jury. The court, however, vacated that part of the order of contempt requiring Rosahn to submit to fingerprinting since the government conceded that it had Rosahn's fingerprints.[1] November 23 Opinion at 507. In addition, the court directed the United States Attorney and other federal agencies involved in this investigation to search their files for any of the subpoenaed information and to report to the court within one week. November 23 Opinion at 508.

On December 1, 1982 the court received an affidavit from Susan Walton, a Special Agent with the Federal Bureau of Investigation, stating, *inter alia,* that:

> Rockland County authorities did take handwriting exemplars from Rosahn. However, Special Agent [Michael G.] Noblett informs me that on February 5, 1982, those exemplars were returned to the Rockland County District Attorney's Office with a notation that the Document Division had retained photographs of the exemplars according to its normal practices. Thereafter, on February 26, 1982, Rosahn sought and obtained an order signed by Judge Howard Miller of the Supreme Court of the State of New York, requiring the return to her of her original handwriting exemplars and copies. . . .
>
> Upon consultation with my fellow Task Force members, it appears that no one engaged in the federal investigation was aware of the existence of the photographs in the Document Division. Thus, while the Document Division was unaware of the order entered by Judge Miller *at Rosahn's request* barring any use of the [sic] Rosahn's exemplars, pursuant to that order no one is permitted to and no one has used those photographs for comparison or any other purpose.

Walton Affidavit at ¶ 3.

On January 5, 1983 Rosahn filed a reply affidavit to the Walton affidavit and renewed her motion to vacate the contempt adjudication. Rosahn states that the Walton affidavit indicates "that the F.B.I. is in possession of handwriting exemplars, but that they are unavailable for comparison because they are protected by a court order of Judge Howard Miller, Rockland County Supreme Court, dated February 3, 1982."

---

1. The court of appeals had previously vacated the contempt adjudication with respect to the subpoenaed photographs. *In re Grand Jury*

*Proceedings Involving Eve Rosahn,* No. 82–6046, Order at 3 n. 1 (2d Cir. April 21, 1982).

Rosahn Reply Affidavit at ¶ 2. Rosahn then argues that the government had possession of three of the four categories of items for which they had subpoenaed Rosahn. Rosahn Reply Affidavit at ¶ 3. Rosahn contends that her incarceration is now predicated solely on her failure to provide the grand jury with hair samples, and that hair samples cannot provide the government with a positive identification. Rosahn Reply Affidavit at ¶ 5. Rosahn concludes that her confinement is based on the government's intention to keep her in jail, not on the failure to provide evidence sought by the subpoena. Rosahn Reply Affidavit at ¶¶ 4, 6.

The government responded to Rosahn's reply affidavit by a letter dated January 7, 1983 over the signature of Stacey J. Moritz ("Moritz"). Moritz states that although the F.B.I. had photographs of Rosahn's handwriting exemplars in their laboratory, "the agents investigating the case were unaware that photographs of Rosahn's exemplars were retained by the Laboratory...." Moritz Letter at 1. Moritz also states that "while the government is technically in possession of [Rosahn's] handwriting samples we are not permitted to make comparisons with them without violating Judge Miller's order." Moritz Letter, *id.* Moritz goes on to suggest that if Rosahn will consent to a modification of Judge Miller's order to permit the F.B.I. to use the photographs of the exemplars, the government will consent to vacating that portion of the contempt order relating to Rosahn's refusal to provide handwriting exemplars. Moritz Letter, *id.*

■ The court finds that the government's suggestion merits consideration. If Rosahn consents to the government's use of the photographs of the exemplars now in their possession, then her subsequent incarceration would be premised solely upon her failure to provide hair samples. The court finds that the probative value of the hair samples, although of possible use in an identification, would not be sufficiently compelling in light of the availability to the government of the other three items and of the particular circumstances of this case to warrant Rosahn's continued incarceration.[2]

■ Accordingly, if Rosahn consents to a modification of Judge Miller's order to permit the government to use the handwriting photographs, the court will exercise its discretion to vacate the order of contempt. *See In re Grand Jury Investigation (Braun),* 600 F.2d 420, 428 (3d Cir.1979); *In re Cueto,* 443 F.Supp. 857, 864 (S.D.N.Y.1978).[3]

SO ORDERED

---

**2.** Courts have indicated that the probative value of hair comparison is somewhat less than that of other items of physical evidence. *See United States v. Brady,* 595 F.2d 359, 362–63 (6th Cir.1979) ("Government presented no evidence as to the general acceptance of microscopic hair analysis in the scientific community."); *United States v. Holleman,* 575 F.2d 139, 145 (7th Cir.1978) ("the identification possible through hair sample comparison is not as positive and absolute as identification by fingerprints ..."); *United States v. Oaxaca,* 569 F.2d 518, 526 (9th Cir.), *cert. denied,* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978) (referring to "the necessarily imprecise character of the hair identification"); *United States v. Brown,* 557 F.2d 541, 556–59 (6th Cir.1977) (rejecting use of hair sample analysis on ground that government failed to demonstrate that ion microprobic analysis is a generally accepted procedure for comparing samples of hair).

**3.** This is not to suggest that the failure to provide hair samples pursuant to a grand jury subpoena is not a ground for contempt. The court's ruling here is a narrow one, limited to the facts of this case.