## PIEMONTE *v.* UNITED STATES.

No. 122. Argued March 21, 1961.—Decided June 19, 1961.

*Melvin B. Lewis* argued the cause and filed a brief for petitioner.

*Theodore George Gilinsky* argued the cause for the United States. With him on the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Wilkey, Acting Assistant Attorney General Foley, Beatrice Rosenberg* and *J. F. Bishop.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Petitioner, Armando Piemonte, while serving a six-year sentence for the sale and possession of heroin, was brought by writ of habeas corpus *ad testificandum* before a federal grand jury inquiring into narcotics offenses. Having consulted his counsel prior to his appearance, before the grand jury he refused to answer all questions

concerning his crime as well as other transactions in narcotics, under the claim of his privilege against self-incrimination. Three days later, the United States Attorney petitioned for an order directing Piemonte to answer the questions put to him. The petition stated that the grand jury was conducting an investigation of illegal narcotics activities, that Piemonte's testimony was required for the investigation in the public interest, that having been questioned on matters relating to narcotics Piemonte claimed his privilege against self-incrimination, wherefore request was made that Piemonte be required to testify pursuant to 18 U. S. C. § 1406. That provision of the Narcotic Control Act of 1956 gives immunity from future prosecution to any witness who is compelled by court order to testify before a federal court or grand jury concerning violations of the narcotics laws.[1]

---

[1] "Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of—

"(1) any provision of part I or part II of subchapter A of chapter 39 of the Internal Revenue Code of 1954 the penalty for which is provided in subsection (a) or (b) of section 7237 of such Code,

"(2) subsection (c), (h), or (i) of section 2 of the Narcotic Drugs Import and Export Act, as amended (21 U. S. C., sec. 174), or

"(3) the Act of July 11, 1941, as amended (21 U. S. C., sec. 184a), is necessary to the public interest, he, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. But no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled after

The section's breadth and constitutionality were considered earlier this Term in *Reina* v. *United States,* 364 U. S. 507.

The district judge, having granted Piemonte immunity from "prosecution which might arise from any answers that you give to this Grand Jury concerning the matter of their investigation," ordered him to testify "relative to the aforementioned inquiry of said Grand Jury . . . ." Piemonte was granted an opportunity to consult his lawyer and his duty to appear before the grand jury was delayed for a day. The next morning he renewed his refusal to answer the questions propounded to him about narcotics activities and again invoked his Fifth Amendment privilege.

That afternoon he was taken back before the District Court to answer an order to show cause why he should not be cited for contempt for deliberately disobeying the previous order to testify. He was represented by his counsel at this proceeding. Having examined the transcript of the grand jury's morning proceedings, the judge asked petitioner if he persisted in refusing to answer the questions, to which Piemonte replied in the affirmative. The judge gave Piemonte's counsel four days to prepare for a plenary hearing of the charge of contumacy, but denied Piemonte's motion for a jury trial.

At the subsequent hearing, the Government stood on its case based on the grand jury transcripts and the court's order to testify. The judge again asked Piemonte if he persisted in his refusal to obey the court's order.

---

having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except prosecution described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

Piemonte took the stand in his own behalf, and made the following explanation for his refusal to testify:

"Well, I am doing time in the penitentiary. I fear for my life. I fear for the life of my wife, my two stepchildren, and my family. I can't do something like that. I want to live, too."

After his counsel's elaboration of this argument, the judge again asked Piemonte if he would testify. Upon his refusal, the judge declared him guilty of contempt of court for willful failure to obey a lawful order. After hearing argument on the sentence, the judge once again offered to give petitioner the opportunity to answer the questions. The refusal having been made definitive, sentence was fixed at eighteen months, to commence at the termination of the imprisonment he was serving.

The contempt judgment was affirmed by the Court of Appeals for the Seventh Circuit, 276 F. 2d 148, and we granted certiorari, 364 U. S. 811.

This record surely evinces the utmost solicitude by the trial court for the defendant's interests. His only claim for reversal here is based upon alleged defects in the proceedings which resulted in his conviction of criminal contempt.[2]

---

[2] Neither before the Court of Appeals nor here was fear for himself or his family urged by Piemonte as a valid excuse from testifying. Nor would this be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law. See *Brown* v. *Walker*, 161 U. S. 591, 600. Lord Chancellor Hardwicke's pithy phrase cannot be too often recalled: "[T]he public has a right to every man's evidence." 12 Hansard's Debates 693; 8 Wigmore, Evidence (3d ed.), p. 64, § 2192.

If two persons witness an offense—one being an innocent bystander and the other an accomplice who is thereafter imprisoned for his participation—the latter has no more right to keep silent than the former. The Government of course has an obligation to protect its citizens from harm. But fear of reprisal offers an immunized prisoner no more dispensation from testifying than it does any innocent bystander without a record.

Petitioner's first claim is that he was subjected to so many differing interpretations of whether he had a privilege to refrain from testifying as to certain questions that the order commanding him to answer lacked sufficient clarity. This is a sheer afterthought. Neither Piemonte nor his counsel ever claimed confusion in the District Court as a basis for his refusal to testify. Nor do the facts reveal that petitioner could have been misled by the out-of-context statements he pieces together for purposes of review.

The first morning before the grand jury, the government attorney asked petitioner:

> "Didn't your lawyer advise you, Mr. Piemonte, on those matters that you pleaded guilty to in the indictment that you have no Constitutional privilege against self-incrimination?"

However, the Government, in order to avoid any argumentative opportunities as to the scope of the area for which it sought immunity, did not attempt to secure an order directing answers for the particular questions relating to matters involved in his former conviction. It requested a broad order of immunity to cover the entire scope of what was under investigation by the grand jury. The United States Attorney told the district judge in seeking the order compelling testimony:

> "[S]o that the Court would not have any misconception of the idea of the Government counsel on this matter, we, too, think that the constitutional privilege claimed by the witness is well taken in this matter."

Petitioner plainly must have known—and gave every indication that he knew—that he was required to answer all questions put to him by the grand jury in return for equivalent, compensating immunity. We find no merit in an argument which is contradicted by petitioner's own

assertion, supported by his counsel's argument, that he refused to testify solely because of fear.

Secondly, petitioner argues that the oral grant of immunity by the district judge was null and void, because the judge said "this Court now grants you immunity from prosecution . . ." and "I now grant you immunity from such prosecution . . . ," when in reality the statute, not the court, grants the immunity. The puerility of this contention is emphasized by petitioner's disregard of the judge's introductory basis of his pronouncement as "in accordance with the provisions of the Narcotic Control Act."

The remaining contentions of petitioner are of even less substantiality, and accordingly the judgment below is

*Affirmed.*

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE DOUGLAS concurs, dissenting.

This case represents another long step in the constantly expanding use by the federal district judges of their summary contempt power to mete out severe prison sentences without according the defendants the benefit of a jury trial and the other rights guaranteed by the Fifth and Sixth Amendments.[1] In an ordinary case of this nature, I would content myself with saying that the conviction

---

[1] Only in the last few years has it become the fashion for district judges to use the summary contempt power as a device for imposing long terms of imprisonment. See, *e. g., Reina* v. *United States,* 364 U. S. 507 (two years' imprisonment); *Brown* v. *United States,* 359 U. S. 41 (fifteen months' imprisonment); *Green* v. *United States,* 356 U. S. 165 (three years' imprisonment); *Collins* v. *United States,* 269 F. 2d 745 (three years' imprisonment); *Tedesco* v. *United States,* 255 F. 2d 35 (two years' imprisonment); *Corona* v. *United States,* 250 F. 2d 578 (two years' imprisonment). Prior to this recent trend, the summary contempt power was seldom used to impose more than a nominal fine or a short term of imprisonment. See *Brown* v. *United States, supra,* at 58–59 (dissenting opinion).

should be reversed on the ground that a federal district judge has no power to impose such punishment in a summary proceeding. See *Green* v. *United States,* 356 U. S. 165, 193 (dissenting opinion); *Reina* v. *United States,* 364 U. S. 507, 515 (dissenting opinion). However, the facts of this case are so disquieting that I am compelled to add a few additional comments.

In 1958, the petitioner was convicted of selling and possessing narcotics in violation of the federal narcotics laws and was sentenced by a Federal District Court to six years' imprisonment. In 1959, while serving his sentence at the Leavenworth Penitentiary, the petitioner was subpoenaed to testify before a federal grand jury conducting an investigation of possible narcotics offenses. He was asked to indicate where he had obtained the narcotics which he was convicted of having possessed and sold. Invoking his Fifth Amendment privilege against self-incrimination, the petitioner refused to answer the question.[2] He was then asked whether he knew several named

---

[2] "Q. You are now incarcerated in the penitentiary, are you not, Mr. Piemonte?

"A. That's right.

"Q. Which one?

"A. Leavenworth Penitentiary.

"Q. You are serving a term of six years?

"A. Six years.

"Q. And that is for the sale and possession of heroin?

"A. Yes, sir.

"Q. Mr. Piemonte, that sale and possession of heroin, there were two sales, were there not, one ounce and 95 grains of heroin that you sold for $3100.00, and another sale—the first one was on November 23, 1957, and the second one was on November 27, 1957, when you sold eight ounces 354 grains for $3,000.00 to Agent Davis; those were the charges in the indictment?

"A. Right.

"Q. Now, Mr. Piemonte, our information is that you were in the narcotic business—Strike that question.

"These two sales of heroin, the first one for $3100.00, and the second

individuals and whether he had obtained the narcotics from any of those individuals. Still relying upon his Fifth Amendment privilege, the petitioner refused to answer each of the questions. On petition of the Government, the District Court authorized the granting of immunity to the petitioner pursuant to 18 U. S. C. § 1406 and instructed him to answer the questions asked by the grand jury. Upon being recalled before the grand jury, the petitioner again invoked the Fifth Amendment and refused to identify those from whom he had obtained the narcotics which constituted the basis for his 1958 conviction.[3] In response to a subsequent order to show cause why he should not be held in contempt of court, the petitioner asserted, as an additional reason for not answering, that the lives of his wife and children, as well as his own life, would be endangered were he to answer the questions. Having denied the petitioner's request for a jury trial, the district judge summarily found the petitioner guilty of contempt of court and sentenced

---

one for $3,000.00, on November 23, 1957, and November 27, 1957, will you tell the Grand Jury, please, where you got the heroin?

"A. Sir, I am taking the 5th Amendment. I decline to answer any questions under the Constitution, the 5th Amendment."

[3] "Q. Now I am going to go over some of those questions that you claimed your privilege on and repeat them to you.

"Now you were convicted in the Federal Court here in Chicago for the sale of heroin on November 23, 1957 that you got $3100 for and another sale on the 27th day of November 1957 that you got $3,000 for.

"Now those were the two sales upon which you were convicted and sentenced to the penitentiary at Leavenworth, is that right?

"A. Right.

"Q. Now the question:

"These two sales of heroin, the first one for $3100 and the second one for $3,000 on November 23, 1957 and November 27, 1957, will you tell the Grand Jury, please, where you got that heroin?

"A. I stand on the Fifth Amendment. I decline to answer as it may tend to incriminate me."

him to eighteen months' imprisonment, to be served after the completion of the six-year sentence imposed in 1958.

In my opinion, the Government has subjected the petitioner to unjustifiable harassment. The petitioner has been convicted for his admittedly illegal conduct and is presently paying his debt to society for that conduct. However, not being satisfied with this punishment, the Government sought to extract from the petitioner, under the threat of a contempt conviction, testimony which it could not have compelled at the original trial in 1958, and which it knows might well endanger petitioner's life and the lives of his loved ones. In my view, the Government's attempt to compel the petitioner to testify about conduct for which he has already been punished, and the District Court's imposition of an additional term in the penitentiary for petitioner's refusal to testify about such conduct represents the type of harassment which violates the spirit of the Double Jeopardy Clause of the Fifth Amendment. Cf. *Abbate* v. *United States,* 359 U. S. 187, 196 (separate opinion of MR. JUSTICE BRENNAN); *Ciucci* v. *Illinois,* 356 U. S. 571, 573 (dissenting opinion). I think it can fairly be said that the treatment which the petitioner has received from the Government and the District Court falls far short of that fundamental fairness which the Constitution guarantees and to which even the basest prisoner in the penitentiary is entitled.[4] Therefore, even if the Court is unwilling to recognize that the Constitution prohibits the imposition of punishment in a summary proceeding, it ought to exercise its supervisory power over the lower federal courts to rectify the abuse of the summary contempt power which the record in this case makes manifest. See *Offutt* v. *United States,* 348 U. S. 11.

---

[4] I do not mean to imply that a person who is incarcerated may, for that reason alone, be excused from testifying before a grand jury. However, I do believe that he cannot be compelled to testify concerning the illegal activity for which he has been incarcerated.

Mr. Justice Douglas, with whom Mr. Justice Black concurs, dissenting.

Petitioner, while a prisoner in a federal penitentiary serving a six-year sentence on a narcotics conviction, was summoned before a grand jury and interrogated about transactions in narcotics.

## I.

One series of questions was opened with the following: "Mr. Piemonte, were you in the narcotics business in 1954?" Following the tender of immunity, petitioner was again asked a series of questions, some of them relating to transactions in narcotics in that year. Among the questions was the following: "Have you supplied Jeremiah Pullings with any heroin?"

These questions and these refusals to answer were on August 10 and 14, 1959. The sentence for contempt was imposed on August 18, 1959. After that date and before February 29, 1960, the date when the Court of Appeals affirmed the appeal, the grand jury returned another indictment against petitioner. This was on September 2, 1959. This indictment charged petitioner and others with a conspiracy to buy and sell narcotics commencing in August 1954. One of the overt acts charged was a conversation in 1955 between Jeremiah Pullings and one of petitioner's co-conspirators under the September 2, 1959, indictment. These 1954 and 1955 transactions, for which petitioner now stands indicted, were ones on which he refused to testify and for which he has been committed for contempt.

Once an indictment was returned, the proceedings of this grand jury became a part of a criminal prosecution directed against petitioner. *Counselman* v. *Hitchcock,* 142 U. S. 547, 562; *United States* v. *Monia,* 317 U. S. 424, 427. When the citizen is formally accused by indictment, he has a constitutional right to stand mute and to refuse

to testify. His right not to take the stand in a federal criminal trial transcends his privilege against self-incrimination. No immunity statute, no pressure of government, no threats of the prosecution can be used to deprive the citizen of this right. See *Wilson* v. *United States,* 149 U. S. 60; *Stewart* v. *United States,* 366 U. S. 1. And it is unthinkable that a district judge would ever hold a defendant in contempt because he refused to take the stand at his own trial. The district judge did no such thing here. But that was the posture of the case when it was decided by the Court of Appeals. For by then the matters about which petitioner refused to answer had become in form and in effect an indictment against him.

There is no power in our free society to compel a person to talk about a matter on which he has been indicted or to penalize him for failure to do so. We might as well say that an accused can be committed for contempt for failure to take the stand at his own trial.

We are advised that after we granted certiorari the indictment against petitioner was dismissed on motion of the Government for lack of evidence. That seems irrelevant. The truth is that the grand jury before which petitioner was summoned did indict him. Petitioner was in fact held in contempt for refusal to testify in a criminal proceeding against him. That is not permissible under the procedures of our free society, whatever may have been the ultimate fate of that criminal proceeding.

## II.

I think the imposition of an eighteen months' sentence was beyond the power of a federal court in a summary proceeding. That was the view stated by MR. JUSTICE BLACK in his dissenting opinion in *Green* v. *United States,* 356 U. S. 165, 193, with which I agreed then and still agree. There is nothing I can find in the Constitution

which permits those who defy a court's decree to be tried in one way and those who defy a mandate of the Congress [1] or an order of the Executive [2] to be tried in another way. Whatever the criminal charge may be, an accused is entitled to the protections afforded by the Constitution—indictment by a grand jury and trial before a petit jury which sits to determine guilt. Determination of guilt by a judge, without these safeguards interposed between the accused and government, marks a continuing erosion of civil rights. The evil is compounded here by reason of the fact that contempt is used to increase a punishment already imposed for an offense as respects which no second indictment could ever be returned. Criminal contempt is used to undermine not only the guarantees of an indictment by a grand jury and a trial by one's peers but also to destroy the protection of double jeopardy.

Plainly this judgment of conviction should not stand.

---

[1] See *Watkins* v. *United States,* 354 U. S. 178.

[2] See *Hirabayashi* v. *United States,* 320 U. S. 81; *Korematsu* v. *United States,* 323 U. S. 214.