**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Samuel DAMIANO, Jr., Defendant-Appellant.**

**No. 77–5314.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1978.

Decided July 6, 1978.

---

1. I.R.C. § 532.

Thomas Longo, Dempsey, Giuliani, Sperli, McMahon & Longo, Cleveland, Ohio, for defendant-appellant.

James R. Williams, U. S. Atty., Solomon Oliver, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before ENGEL, KEITH and MERRITT, Circuit Judges.

KEITH, Circuit Judge.

The issue before this Court is whether a person who has pled guilty to passing and uttering counterfeit obligations may subsequently refuse to testify at the trial of an acquaintance also charged with passing and uttering counterfeit obligations on the ground that his answers might subject him to further prosecution in violation of the Fifth Amendment. Judge Lambros, the district court judge, adjudged the witness in contempt. We affirm.

On April 27, 1977, Samuel Damiano pled guilty to two counts of a three count indictment charging him with passing and uttering counterfeit obligations, in violation of 18 U.S.C. §§ 472 and 2. Upon tender of his guilty plea, the government dismissed the third count. Defendant was sentenced to one year imprisonment on each count, said sentence to run concurrently.[1] On May 18,

1977, Damiano was subpoenaed as a government witness in the trial of Herbert Cordell who likewise had been indicted for passing and uttering counterfeit obligations.[2] The record discloses that Damiano agreed to and did assist federal agents in their efforts to gain information concerning Cordell. Prior to permitting Damiano to testify before the jury, the district judge conducted an extensive hearing to determine the extent of Damiano's Fifth Amendment claims. During the voir dire, the Assistant United States Attorney propounded those questions which he intended to ask Damiano in the presence of the jury. Damiano asserted his Fifth Amendment rights and refused to answer the questions.[3] He further stated that he feared for his personal safety.

The questions put to Damiano fall into two categories. In the first category of questions, the government sought to prove that Cordell sold counterfeit notes to Damiano. The district court ruled that Damiano's guilty pleas waived his Fifth Amendment privilege as to the offenses pled to, but did not constitute a blanket waiver as to other offenses that might form the basis of later charges. *United States v. Seavers*, 472 F.2d 607 (6th Cir. 1973). Hence, the district court correctly ruled that inquiring of Damiano as to the source or acquisition of the notes would not be permitted because the possibility existed that he might be subject to state criminal prosecution.

Damiano also refused to answer the second category of questions, which related to the assistance he rendered federal agents in obtaining information about Cordell's criminal activity. Damiano cooperated with federal authorities by tape recording various discussions he had with Cordell. Damiano argues that his answers to questions propounded by the government regarding these conversations would have dis-

---

1. Damiano began serving his sentence on July 25, 1977.

2. *United States of America v. Herbert B. Cordell*, Crim. Action No. CR77–44, N.D. Ohio.

3. The record discloses that the government did not request nor did the district court issue an order granting this witness immunity, a procedure necessary under the immunity statutes. 18 U.S.C. §§ 6002, 6003; *United States v. Seavers*, 472 F.2d 607, 609–10 (6th Cir. 1973).

closed a course of dealings between himself and Cordell which would have subjected him to state complicity and organized crime charges pursuant to Ohio Revised Code §§ 2923.03, 2923.04 (1975). The district court ruled that the Fifth Amendment privilege did not attach to questions relating to whether or not he knew Cordell, whether he engaged in conversations with federal agents to cooperate with them in their investigation, or whether he taped conversations with Cordell in his undercover capacity. The district court further carefully limited even this line of questioning:

> THE COURT: However, questioning him with respect to circumstances as to the purpose for this taping, the meeting in a manner calculated to induce from him a summary of prior circumstances where: The reason I did this, and the reason I cooperated with the Government was because of the information I had given them consisting of such and such, certainly I would not permit questioning in that form.
>
> I think the questions, in order to eliminate any prejudicial throw-off and to prejudice, of course, his Fifth Amendment right, should be limited to his meeting with Cordell at a particular time and date, and that this meeting was as a result of prearrangements with the Government's agents, and that—I don't know—I assume he had a tape recorder with him, that he had a tape report of where the conversation took place, what was said by him, what was said by Cordell: Certainly, this would be permissible.
>
> I don't view those meetings or that conduct as criminal conduct on the part of Damiano, as this was done in cooperation with the Government acting in an undercover capacity. . . . [T]hose meetings which were conducted and conversations had with arrangements from the Government, certainly do not involve any criminal intent on the part of Mr. Damiano and could not be the basis of any Federal or state prosecution.

The district judge thoroughly explained to Damiano the consequences of his refusal to answer those questions which the district court determined could not possibly incriminate him. Upon his continued refusal to testify, the district court summarily held Damiano in contempt, in accordance with Rule 42(a), Fed.R.Crim.Pro., and sentenced him to incarceration for six months.[4]

■ It is well settled that the Fifth Amendment privilege against self incrimination protects a federal witness from incrimination under state as well as federal law. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *United States v. Seavers, supra*. The privilege, however, is grounded on a reasonable fear of danger of prosecution. *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *In Re Atterbury*, 316 F.2d 106 (6th Cir. 1963). Damiano urges that his refusal to testify as to whether or not he knew Cordell, or whether he had assisted federal agents was grounded on his belief that he would be subject to subsequent state or federal prosecution. However, "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951); *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). We fail to see how Damiano could be found to have the requisite intent or *mens rea* for any subsequent state or federal prosecution where his activity was conducted on behalf of federal authorities in an undercover capacity.

■ Damiano also claims that his refusal to answer was based on fear for his personal safety because one person allegedly involved in the investigation into the counterfeit operation had been found dead and

---

**4.** The court deferred execution of the six month sentence pending a later inquiry and receipt of a report from the Bureau of Prisons relative to Damiano's conduct and progress. At that time the court noted it would determine whether the contempt sentence was to run concurrently or consecutively with the sentence previously imposed upon Damiano's guilty pleas.

another wounded. However, fear for the safety of one's self or others is not a ground for refusing to testify. *Piemonte v. United States*, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961); *Rogers v. United States, supra; United States v. Seavers, supra.*

We affirm the district court's judgment of contempt.