**In the Matter of GRAND JURY INVESTIGATION (DETROIT POLICE DEPARTMENT SPECIAL CASH FUND).**

**Nos. 90–2131/2211.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1990.

Decided Jan. 10, 1991.

Rehearing and Rehearing En Banc Denied in No. 90–2131 March 26, 1991.

Richard A. Rossman, Abraham Singer (argued), Joel D. Applebaum, Pepper, Hamilton & Scheetz, Detroit, Mich., for City of Detroit.

Alan M. Gershel, Asst. U.S. Atty. (argued), Jennifer J. Peregord, Craig A. Weier, Office of the U.S. Atty., Detroit, Mich., for respondent-appellee.

Samuel C. Gardner, James W. McGinnis (argued), George N. Koklanaris, Bell & Gardner, Detroit, Mich., for Sylvester Chapman.

Before MARTIN and JONES, Circuit Judges, and EDGAR, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

These consolidated appeals arise from a complex grand jury investigation of alleged improprieties involving the Detroit police department's special operations imprest cash account. In order to satisfy a request for anonymity, we will refer to the individual under subpoena, and the subject of this appeal, using the masculine gender and the word Witness. Witness appeals the order of the Eastern District of Michigan finding him in civil contempt for failing to appropriately respond to a subpoena *duces tecum* issued by the grand jury. The City of Detroit appeals the denial of its motion to quash that subpoena. The crux of both cases is Witness's refusal to disclose to the grand jury the names of confidential informers to whom Witness allegedly paid large sums of money in return for information about criminal dealings.

Witness is a Detroit police officer who has operated as an undercover agent for 18 years. He was assigned to the office of the Chief of Police in January of 1985 to perform "deep undercover" operations for the Detroit police department. In this capacity, Witness reported only to the Chief of Police or his designee. To facilitate his investigation, he developed a network of informers to whom he paid police department funds in exchange for information about actual and potential criminal activity. Witness has alleged that the police department's paperwork requirements frustrated his ability to act quickly in his dealings with informers, requiring the Chief to maintain a cash fund from which Witness could draw as needed. Witness claims to have distributed between $2,000 and $5,000 per month to his underworld contacts during the five year period at issue. No records were kept to justify these expenditures.

On May 1, 1990, Witness was subpoenaed to appear before a grand jury investigating allegations of corruption within the Detroit police department, focusing specifically on the department's special operations imprest cash account, known as the "secret service fund." The grand jury has discovered disbursements of approximately $2.4 million from the fund for which no records have been kept; $1.2 million of this amount was disbursed in the form of checks made payable to cash. The proceeds of these checks were given directly to Detroit Police

---

[*] The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Chief William Hart. The grand jury seeks testimony to determine whether Hart's handling of these funds was appropriate.

Pursuant to a grant of immunity, Witness appeared and testified before the grand jury on July 18, 1990. He testified that he had received between $100,000 and $300,000 from the Fund, asserting that he had used the money to pay some 36 confidential informers. The names of these informers were not revealed by Witness because he claimed he was a holder of the informer's privilege, which would permit him to withhold that information from investigators. *See, e.g., Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

Following this limited testimony, Witness's counsel filed a motion to quash the grand jury subpoena, asserting the informer's privilege. Thereafter, the City of Detroit filed a motion to intervene and a motion to quash the grand jury subpoena, claiming it was the proper party to invoke the informer's privilege. The city's motion to intervene was denied by the district court; an appeal to this Court followed. Intervention was ultimately permitted, without our consideration of the issue, pursuant to an agreement between the United States Attorney and the City of Detroit stipulating that the City be allowed to proceed with its motion to quash on the grounds of the informer's privilege. Following an evidentiary hearing, the district court issued an order on October 15, 1990, denying the city's motion to quash, finding the informer's privilege to be inapplicable, and ordering Witness to reappear before the grand jury to provide the names of the informers at issue. The City of Detroit appeals this ruling of the district court.

Witness reappeared before the grand jury on October 24, 1990, at which time he again refused to disclose the names of the informers to whom he had made payments. On October 26, he appeared before the district court pursuant to an order to show cause why he should not be held in contempt for refusing to comply with the grand jury subpoena. These proceedings were stayed by order of this Court pending our resolution of the City of Detroit's motion to intervene. The show cause proceedings resumed on November 1, at which time Witness again declined to testify, claiming that fear for his safety, and the safety of others, constituted "just cause" to refuse to comply with an order to testify under the Recalcitrant Witness Statute, 28 U.S.C. § 1826(a). By an order of November 2, the district court rejected Witness's claim, finding him in contempt, and directing him to the custody of the Marshal on November 9, 1990, or until such time as he agrees to comply with the grand jury subpoena. A notice of appeal was filed, and an emergency motion for stay of contempt order pending appeal was granted on November 8, pending the November 29 hearing on the merits.

We consolidated these appeals pursuant to Rule 3(b), Fed.R.App.P., as common issues of law and fact are presented. The City of Detroit and Witness contended below and maintain here that Witness may not be forced to disclose the names of confidential informers or be held in contempt because (1) the City of Detroit holds an informer's privilege allowing it to intervene to prevent the grand jury from inquiring into the names of those informers, and (2) Witness's fear for his safety, and the safety of others, constitutes "just cause" precluding civil contempt.

## I. THE INFORMER'S PRIVILEGE

The Federal Grand Jury performs "the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (footnote omitted). Accordingly, the grand jury is vested with broad subpoena powers not otherwise permitted outside the grand jury context. *In re Matter of Walsh,* 623 F.2d 489, 492 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). However, that power is not unlimited; the grand jury may not use its authority to "violate a valid privilege, whether established by the Constitution, statutes, or the

common law." *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). Therefore, in the posture of this appeal, we must determine whether enforcement of the grand jury subpoena would violate the City of Detroit's privilege to withhold from disclosure the identity of criminal informers. *See United States v. Sharp*, 778 F.2d 1182 (6th Cir.1985), *cert. denied*, 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986) (discussing application of informer's privilege in the Sixth Circuit).

 The informer's privilege is a creature of the common law designed to provide the government with a qualified immunity to withhold from disclosure the identity of individuals who furnish information of criminal activity to law enforcement officials. *McCray v. Illinois*, 386 U.S. 300, 308–09, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62 (1967). *See also* 8 Wigmore, *Evidence* § 2374 (McNaughton rev. 1961). The privilege was created to protect the public's interest in effective law enforcement through the maintenance of the "Government's channels of communication by shielding the identity of an informer from those who would have cause to resent his conduct." *Roviaro v. United States*, 353 U.S. 53, 60 n. 8, 77 S.Ct. 623, 627 n. 8, 1 L.Ed.2d 639 (1957). The privilege, however, is not absolute; concern for the rights of criminal defendants requires that the privilege give way where the informer's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause[.]" *Id.* at 60–61, 77 S.Ct. at 628. In determining whether disclosure is justified, the precepts of fundamental fairness require a balancing of

> the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance

of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 629.

 As an evidentiary privilege, the informer's privilege is not to be expansively construed to excuse an individual's testimonial obligation because such privileges create an inherent tension with society's legitimate interest in complete disclosure of the truth. *United States v. Nixon*, 418 U.S. 683, 710 n. 18, 94 S.Ct. 3090, 3108 n. 18, 41 L.Ed.2d 1039 (1974). This tension is magnified within the unique setting of a grand jury. To ensure that the grand jury may properly fulfill its investigatory function, a privilege must be applied only to the extent necessary to effectuate its purpose. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

 The City of Detroit's assertion that the facts of this case require the application of the informer's privilege to ensure effective law enforcement strikes this court as disingenuous. This is not a typical case in which the prosecution seeks to withhold the identity of an informer who, unknown to the defendant, has revealed information about underlying criminal transactions to law enforcement officials. Rather, this is a case where the target of a grand jury investigation seeks to thwart inquiry into its own possible corruption by claiming the informer's privilege. Such a finding would not protect the identity of an informer from "those who would have cause to resent his conduct," but rather would shield allegedly corrupt governmental bodies from investigatory scrutiny, thus distorting, rather than preserving, the valid interests protected by the informer's privilege.

Indeed, in this context, disclosure of an informant's identity within the secret confines of the grand jury proceedings is entirely consistent with the purposes underlying the informer's privilege. Disclosure to the grand jury will protect the public's interest in the integrity of the law enforcement establishment, while neither subjecting the informer to those who might resent his conduct nor permitting widespread dissemination of the underlying information.

The City of Detroit argues that should this Court require Witness to answer questions regarding confidential informers, sources of information will "dry up" on the streets as informers fear exposure, especially in a case such as this where the shield of grand jury secrecy has been penetrated.[1] It contends that the aftermath will be a devastating loss of police effectiveness. We cannot accept this argument, as the Supreme Court has denied a similar claim in the analogous area of the media source privilege. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). *See Developments in the Law— Privileged Communications,* 98 Harv.L. Rev. 1450, 1596–1609 (1985) (comparing informer's and media-source privileges). In *Branzburg,* the Court rejected the argument that the denial of a constitutionally based media source privilege would irreparably damage the business of news gathering, stating:

> The argument that the flow of news will be diminished by compelling reporters to aid the grand jury in a criminal investigation is not irrational, . . . but the evidence fails to demonstrate that there would be a significant constriction of the flow of news to the public if this Court reaffirms the prior common-law and constitutional rule regarding the testimonial obligations of newsmen. . . . Reliance by the press on confidential informants does not mean that all such sources will in fact dry up because of the later possible appearance of the newsman before the grand jury. . . . [W]e cannot accept the argument that the public interest in possible future news about crime from undisclosed, unverified sources must take precedence over the public interest in pursuing and prosecuting those crimes reported to the press by informants and

in thus deterring the commission of such crimes in the future.

408 U.S. at 693–95, 92 S.Ct. at 2662–63.

Given the practical effect *Branzburg* has had upon the information market, we have no doubt that adequate information will remain available to local police if this Court allows the federal grand jury access to criminal informers. In their investigation of possibly corrupt local practices, federal officials have an equal incentive to preserve a network of confidential informers as they "are themselves experienced in dealing with informers, and have their own methods for protecting them without interference with the effective administration of justice." *Id.* at 695, 92 S.Ct. at 2663.

As to the City of Detroit's argument that the privilege should be extended because of "leaks" from the grand jury, we find the better course is to rely on the power of the presiding judge to employ procedures designed to eliminate the unauthorized disclosure of secret information. *See In re: Matter of Archuleta,* 561 F.2d 1059, 1064 (2d Cir.1977).

■ The City of Detroit has not brought a single case to the attention of this Court which would uphold an assertion of the privilege by a target of a grand jury investigation or a criminal defendant. In part, this failure must be based on the principle that such parties do not hold an informer's privilege because "[t]he privilege of the *prosecution* to refuse to disclose the identity of an informant is an important and somewhat unique concession to the *prosecution*. . . ." *United States v. Ybarra,* 430 F.2d 1230, 1233–34 (9th Cir.1970), *cert. denied,* 400 U.S. 1023, 91 S.Ct. 589, 27 L.Ed.2d 636 (1971) (emphasis added). *But cf. Holman v. Cayce,* 873 F.2d 944 (6th Cir.1989) (permitting civil defendant police officer to assert informer's privilege in

---

1. Understandably, this grand jury investigation has been the subject of intense media activity. Several news reports were sufficiently detailed to provoke concern over the integrity of the proceedings. These reports revealed "(1) the scope and direction of the grand jury investigation, (2) testimony before the grand jury; (3) actions before the grand jury; (4) the identity of witnesses called to testify before the grand jury; (5) the actions of the grand jury; and (6) what

has and will occur before the grand jury." Amended Order of October 9, 1990. The presiding judge ordered an investigation of all possible leaks by the Office of Professional Responsibility of the Department of Justice. Thereafter, individuals involved in the investigation continued to be the targets of media scrutiny; however, no allegations have been made that would imply that this attention is the product of any impropriety within the grand jury investigation.

§ 1983 action). Because the City of Detroit stands not in the role of the prosecutor, but in that of the accused, we agree with the district court that the City has not borne its burden of demonstrating that the matters under inquiry fall within the confines of the informer's privilege. *Matter of Certain Complaints Under Investigation*, 783 F.2d 1488, 1520 (11th Cir.), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986). Accordingly, we hold the informer's privilege to be inapplicable to state or local governments seeking to withhold information from federal grand juries, thus compelling Witness's compliance with a duly issued grand jury subpoena and dismissing the City of Detroit from these proceedings as it no longer has any claim or interest in the outcome.

## II. THE RECALCITRANT WITNESS STATUTE

Witness raises two claims on appeal with regard to the imposition of civil contempt under the Recalcitrant Witness Statute, 28 U.S.C. § 1826(a). At oral argument, counsel for Witness alleged that the memorandum opinion and order of the district judge issued at the conclusion of the show cause hearing failed to address Witness's § 1826(a) claim, thus denying Witness an opportunity to be heard. In his brief, Witness alleges that fear for his safety, and the safety of others, establishes "just cause" to refuse to comply with a court order to testify, thus precluding civil contempt under § 1826(a). We find no merit in either argument.

■ At the outset we note that Witness's fifth amendment right to refuse to testify before the grand jury is absolute. *United States v. Damiano*, 579 F.2d 1001, 1003 (6th Cir.1978). However, once a witness waives that right, or is granted immunity from prosecution, he is subject to the contempt power of the court for failing to fully comply with the underlying subpoena. *Id.* The court derives its civil contempt power from 28 U.S.C. § 1826(a), which provides in pertinent part:

Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify ... the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information.

■ At oral argument, counsel for Witness claimed that the district court had failed to make a specific finding as to the merits of Witness's "just cause" claim. Following oral argument this Court received a complete record of the district court proceedings, which contained a November 2, 1990, order issued by the district court. That order stated that the court had conducted a full evidentiary hearing on the matter and had found that "[Witness] has failed to demonstrate 'just cause' for his refusal to comply with the Court's October 15, 1990, Order within the meaning of 28 U.S.C. § 1826(a)." We find this order to preclude Witness's claim that he was denied an opportunity to be heard.

■ We also disagree with Witness's assertion that fear for his safety and the safety of others satisfies the "just cause" standard of § 1826(a). Because "the term 'just cause' is not defined in the statute and there is no pertinent legislative history[,]" courts have been left to their own devices to determine whether or when fear is or may be a sufficient grounds upon which to preclude civil contempt following a refusal to testify under § 1826(a). *Matter of Grand Jury Proceedings Empanelled May 1988*, 894 F.2d 881, 884 (7th Cir.1989). Prior to the enactment of § 1826(a), the Supreme Court stated, albeit in dicta, that such concerns would not provide a legal basis for a refusal to testify. *Piemonte v. United States*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1722 n. 2, 6 L.Ed.2d 1028 (1961). This Court has applied that reasoning to criminal contempt actions under Rule 42(a), Fed.R.Crim.Pro., holding that despite evidence of reprisals, "fear for the safety of one's self or others is not a ground for refusing to testify." *United States v. Damiano*, 579 F.2d at 1004. The same policy

1273

concern for judicial effectiveness that fueled our decision in *Damiano*, and that underlie the decisions of the other circuits that have reached this issue, require us to hold that fear is not a just cause to excuse the obligation to testify under § 1826(a), particularly before a grand jury. *In re Grand Jury Proceedings*, 862 F.2d 430, 432 (2d Cir.1988); *Matter of Crededio*, 759 F.2d 589, 593 (7th Cir.1985); *Simkin v. United States*, 715 F.2d 34, 37–38 (2d Cir. 1983); *In re Grand Jury Proceedings*, 652 F.2d 413, 414 (5th Cir.1981); *Dupuy v. United States*, 518 F.2d 1295 (9th Cir.1975); *In re Kilgo*, 484 F.2d 1215, 1221 (4th Cir. 1973). To hold otherwise would be to irreparably damage the subpoena power of the federal grand jury.

All other issues raised by Witness are without merit.

Accordingly, the judgment of the district court is affirmed. The stay issued by this Court on November 29, 1990 is to be lifted immediately.