**In re: Grand Jury Proceedings, Refusal to testify by Charles GOFF, Jr.**

No. 04–4072.

United States Court of Appeals, Sixth Circuit.

Sept. 23, 2004.

Before MERRITT, MOORE and GILMAN, Circuit Judges.

**ORDER**

A grand jury subpoena was issued to Charles Goff, Jr., a federal prison inmate, to testify before a grand jury regarding violations of 21 U.S.C. § 841 and 21 U.S.C. § 846. He refused to answer questions. On July 8, 2004, the District Court granted, on the Government's motion, an order directing Goff to testify. Goff then indicated he was refusing to answer questions based on his Fifth Amendment right against self-incrimination. On July 13, 2004, the District Court granted the Government's motion to compel Goff's testimony. The court order explicitly granted Goff immunity for his testimony before the grand jury: "Such testimony compelled under this Order may not be used against Charles Goff, Jr. in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this Order."[1]

During the July 13 proceedings, Goff still refused to testify. The district court found him in civil contempt and ordered that he be incarcerated until such time as

---

1. The order compelling his testimony and granting him immunity eviscerates any Fifth Amendment claim:

    At the outset we note that Witness's fifth amendment right to refuse to testify before the grand jury is absolute. *United States v. Damiano*, 579 F.2d 1001, 1003 (6th Cir. 1978). However, once a witness waives that right, or is granted immunity from prosecution, he is subject to the contempt power of the court for failing to fully comply with the underlying subpoena. *Id.* *In re Grand Jury Investigation*, 922 F.2d at 1272.

he is willing to testify or, alternatively, until the expiration of the Grand Jury Term. The court further ordered that his confinement for civil contempt would not be credited to his current federal sentence. Goff filed a notice of appeal on August 31, 2004, and the appeal was docketed with this court on September 1, 2004. Pursuant to 28 U.S.C. § 1826, the appeal must be disposed of as soon as practicable, but not later than thirty days from filing. Goff in his brief has requested oral argument, but our decision is controlled by precedent. Oral argument is not warranted.

Pursuant to 28 U.S.C. § 1826(a), a recalcitrant witness who refuses an order to testify "without just cause shown" is properly subject to confinement. In his brief, Goff contends that he refused to testify out of fear that the people he might implicate would endanger his family.[2] He contends that this fear for his family's safety should constitute "just cause." This Court's decision, *In re Grand Jury Investigation,* 922 F.2d 1266 (6th Cir.1991), as Goff admits, stands directly in the way of the fear argument: "We hold that fear is not a just cause to excuse the obligation to testify under § 1826(a), particularly before a Grand Jury." 922 F.2d at 1273. This Court relied on dicta from the 1961 Supreme Court decision, *Piemonte v. United States,* 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961). In a footnote, the *Piemonte* court wrote:

> Neither before the Court of Appeals nor here was fear for himself or his family urged by Piemonte as a valid excuse from testifying. Nor would this be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law. *See Brown v. Walker,* 161 U.S. 591, 600, 16 S.Ct. 644, 40 L.Ed. 819. Lord Chancellor Hardwicke's pithy phrase cannot be too often recalled: "(T)he public has a right to every man's evidence." 12 Hansard's Debates 693; 8 Wigmore, Evidence (3d ed.), p. 64, § 2192.

*Id.* at 559. Neither *Piemonte* or *Grand Jury Investigation* has been questioned in this Circuit.

The decision of the District Court to find Goff in civil contempt and to confine him until he testifies or the Grand Jury expires is therefore AFFIRMED.

Accordingly, it is so ORDERED.

---

2. Goff indicates this fear during the proceedings:

> ... I have family, and you know, I never want to jeopardize my family or anything like that and being here would mean that they're making me, they can compel me to testify. Can any of these people say they can actually protect my family from anything, or anything that might happen to my family, even myself, you know. I consider it unjust, even though it be the law that, you know, they can tell me that, they can come get me back after five and a half years and try and make me inform, whatever, on other people, you know, I understand what you're saying, but I don't consider it to be fair at all.

(Tr. at 11.) Later in the proceedings, the record indicates that Goff was willing to testify as long as he did not have to testify about certain people. (Tr. at 15.) Goff's attorney suggested that "there are some questions about some individuals in Chicago that are fairly big in the grand scheme, and they, I believe, know where Charley's family lives, meaning his sister and his child." (Tr. at 2–3.)