In re: **GRAND JURY INVESTIGATION JOHN DOE.**

No. 1:07dm584.

United States District Court, E.D. Virginia, Alexandria Division.

March 28, 2008.

### *ORDER*

T.S. ELLIS, III, District Judge.

The matter came before the Court for a hearing on January 3, 2008, based on John Doe's refusal to testify before the grand jury despite being granted use immunity by Order dated December 19, 2007. *See In re: Grand Jury Investigation John Doe,* 1:07dm584 (E.D.Va. Dec. 19, 2007) (Order) (Brinkema, J.). In the course of the hearing, Doe was advised, *inter alia,* that he did not have a Fifth Amendment right to refuse to testify before the grand jury in light of the fact that he had been granted use immunity. Doe was also warned that in the event he persisted in his refusal to testify, he could be held in civil contempt and incarcerated for the entire term of the grand jury, including any extensions thereto, or 18 months. *See* 28 U.S.C. § 1826(a). Despite these warnings, Doe persisted in his refusal to testify before the grand jury and subsequent hearings were therefore held on January 11 and February 8, 2008, at the conclusion of which the issue was taken under advisement. The matter has now been fully briefed and is ripe for disposition.

### I.

A brief factual summary is necessary to put the contempt issue in context. Doe, a foreign national from Country A, originally came to the attention of the grand jury as a result of his arrest and prosecution for cocaine distribution in 2007 in the United States District Court for the District of Maryland. Specifically, on February 13, 2007, Maryland State Police conducted a traffic stop of a rental vehicle driven by Doe. After a positive alert by a narcotics detection canine, the officers conducted a search of the vehicle and recovered approximately 70 kilograms of cocaine in three large duffel bags located in the trunk of the vehicle. Both Doe and his passenger—identified as Doe's uncle—were arrested at the conclusion of the traffic stop.

The following day, February 14, 2007, Doe, after being advised of his *Miranda* rights,[1] waived those rights and discussed

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

with the agents some of the details of his involvement and knowledge of the events leading up to his arrest on February 13, 2007. For example, Doe disclosed that he had transported and distributed multi-kilogram quantities of cocaine over the previous six months for Person A, a foreign national located in City A, Country A. Doe further disclosed that he and his uncle had distributed quantities of cocaine in Maryland on three additional occasions in the previous three months. Doe provided details of various aspects of his cocaine distribution business, including specifically his interactions with his employer, Person A, as well as the brother of his employer, Person B. He revealed the names of several of his drug distribution associates from California, including Person C and Person D, and stated that they, too, worked for Person A. Doe also disclosed the name of Person E, describing that individual as someone to whom he had delivered multiple kilograms of cocaine on three occasions. In all, Doe provided the agents significant details of the overall operation and practices of the drug distribution business in which he was involved, as well as more specific details about the various quantities of cocaine and currency exchanged in specific drug transactions.

Several months after his arrest, Doe was brought before the grand jury in this District to testify regarding his involvement in, and knowledge of, the aforementioned drug transactions. Yet, despite being granted use immunity,[2] he has continuously refused to testify as to these matters. In essence, Doe's persistent refusal to testify before the grand jury is based on his apparent fear of retaliation against himself and his family members, many of whom, like Person A, reside in City A, Country A. In this regard, Doe concedes that no specific threats have been made against either him or any of his family members. Despite the absence of any specific threats, Doe was nonetheless offered assistance by the government in the form of investigative measures and/or placement in the Witness Protection Program but, to date, Doe has refused any such assistance from the government. At this juncture, therefore, the government seeks to have Doe held in civil contempt as a means to coerce him to testify before the grand jury, arguing, *inter alia*, that such a finding is warranted notwithstanding Doe's stated fear of retaliation against himself and his family.

## II.

As a starting point in the analysis, it is well-settled that grand jury subpoenas are appropriately enforced through the inherent civil and criminal contempt powers of district courts. *See Finn v. Schiller*, 72 F.3d 1182, 1190–91 (4th Cir.1996) (discussing district court's inherent supervisory power over grand jury proceedings and civil and criminal contempt proceedings). These are distinct powers with distinct purposes. Civil contempt, on the one hand, involves an effort to *coerce* a witness to comply with a properly issued subpoena, whereas criminal contempt is used to *punish* a witness for having refused to comply with such a subpoena. *See United States v. Pratt*, 351 F.3d 131, 140 (4th Cir.2003) (recognizing that "[a] civil contempt sentence aims to 'coerce the defendant to do the thing required,' whereas a sentence for criminal contempt 'operates ... solely as punishment for the completed act of disobedience'") (citations omitted). Thus, unlike civil contempt proceedings, compliance with the subpoena is no longer the primary goal in criminal contempt pro-

---

**2.** The federal immunity statute, set forth at 18 U.S.C. §§ 6001–05, grants use and derivative use immunity to witnesses who are compelled to testify over a Fifth Amendment claim of self-incrimination.

ceedings; instead the goal in the criminal context is punishment for the non-compliance. And, because the line between coercion and punishment is often indistinct, courts must take care to ensure that this line is not impermissibly crossed in the course of civil contempt proceedings.

Given these principles, it is clear that when the government seeks to *coerce* a witness to comply with a grand jury subpoena, as here, it invokes the district court's inherent civil contempt power, as supplemented by the "recalcitrant witness" statute, 28 U.S.C. § 1826.[3] Under that statute, a grand jury witness is appropriately held in civil contempt if he or she "refuses without just cause shown to comply with an order of the court to testify or provide other information...." 28 U.S.C, § 1826(a). Here, the essential question presented is whether Doe has established "just cause" for his persistent refusal to testify before the grand jury. *Id.* Notwithstanding Doe's stated fear of retaliation against himself and his family, the answer to that question is unmistakably "no" in the circumstances presented here.

Specifically, once a witness has been granted use immunity, as occurred here, that witness ordinarily may not refuse to testify before the grand jury and may be held in contempt if he persists in his recalcitrance. *See, e.g., In re Grand Jury Proceedings*, 914 F.2d 248 (Table), 1990 WL 133109, *1 (4th Cir.1990). Importantly, this result is appropriate despite any potential adverse consequences arising out of, or resulting from, compliance with the subpoena. For example, it is clear that an immunized witness may not refuse to testify even if doing so would subject that individual to adverse civil consequences. *See, e.g., United States v. Apfelbaum*, 445

U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); *Ullmann v. United States*, 350 U.S. 422, 430–31, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Nor may an immunized witness refuse to testify on the ground that his testimony could ultimately result in his deportation. *See I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 1038–1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). The Fourth Circuit has also held that a witness is required to testify under a grant of immunity in the United States even if that witness's testimony would result in a possible criminal conviction in a foreign country. *See United States v. Balsys*, 524 U.S. 666, 698–99, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998); *In re Grand Jury Proceedings, John Doe # 700*, 817 F.2d 1108, 1112 (4th Cir.1987); *United States v. Under Seal*, 807 F.2d 374 (4th Cir.1986) (noting that an exception might be made if the United States inspired, instigated or controls the foreign prosecution or if the grant of immunity was given for no apparent United States purpose).

Given these settled principles, it is not surprising that courts in this circuit and elsewhere have concluded that an immunized witness is not excused from testifying before the grand jury where, as here, he or she fears for his or her own safety or the safety of others. Indeed, the Supreme Court in *Piemonte v. United States*, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961) was presented with facts similar to those at bar. There, a convicted narcotics trafficker was summoned to testify before a federal grand jury to explain where he had received the drugs that were the basis of his conviction. Like Doe, Piemonte was granted immunity from further prosecution based on any grand jury testimony he

---

**3.** According to its legislative history, that statute was "intended to codify [then-]present civil contempt practice with respect to recalcitrant witnesses in federal grand jury ... proceedings." H.R.Rep. No. 91–1549, 91st Cong., 2nd Sess. (Sept. 30, 1970), *reprinted at* 1970 U.S.C.C.A.N. 4007, 4008.

might provide. Also like Doe, Piemonte refused to testify, advising the court, "Well, I am doing time in the penitentiary, I fear for my life. I fear for the life of my wife, my two stepchildren, and my family. I can't do something like that. I want to live, too." *Id.* at 559, 81 S.Ct. 1720. And, while the Supreme Court was only presented with alleged procedural defects raised in the *Piemonte* case, Justice Frankfurter nonetheless noted the following in a footnote:

> Neither before the Court of Appeals nor here was fear for himself or his family urged by Piemonte as a valid excuse from testifying. Nor would this be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law.... If two persons witness an offense—one being an innocent bystander and the other an accomplice who is thereafter imprisoned for his participation—the latter has no more right to keep silent than the former. The Government of course has an obligation to protect its citizens from harm. But fear of reprisal offers an immunized prisoner no more dispensation from testifying

than it does any innocent bystander without a record.

*Id.* at 559, n. 2, 81 S.Ct. 1720.

Although Justice Frankfurter's remarks in *Piemonte* were *dicta,* courts in this circuit and elsewhere have since followed the Justice's sound reasoning in rejecting claims similar to those presented by Doe here. The Fourth Circuit, in particular, has held that an immunized witness's "unwillingness to implicate other persons and fear for his own safely" does not provide a legal basis for his refusal to testify before the grand jury to avoid a finding of civil contempt. *In re Kilgo,* 484 F.2d 1215, 1221 (4th Cir.1973).[4] This sensible conclusion is supported by the basic principle, recognized by the Supreme Court in *Piemonte,* that every citizen has an obligation to share with the grand jury any evidence that he or she may have of a crime having been committed. *See Piemonte,* 367 U.S. at 559, n. 2, 81 S.Ct. 1720.

In an attempt to exempt himself from this general rule, Doe, relying on a Seventh Circuit case, argues that the violence and lawlessness inherent in the drug trade in Country A gives rise to a "palpable imminent danger" sufficient to constitute a defense to a finding of civil contempt in

---

4. *See also In re Grand Jury Proceedings of Special April 2002 Grand Jury,* 347 F.3d 197, 208 (7th Cir.2003) (stating, *inter alia,* that "fear for one's own safety and the safety of one's family is not itself 'just cause' for refusing to testify, and thus will not provide a defense to civil contempt in a grand jury proceeding"); *United States v. Winter,* 70 F.3d 655, 665 (1st Cir.1995) (recognizing that "it has been widely held that a witness* fear of reprisal against himself or his family does not constitute just cause for refusing to testify") (citations omitted); *In re Grand Jury Proceedings,* 943 F.2d 132, 135 (1st Cir.1991) (recognizing that "[o]ne of appellant's stated reasons, that he feared for himself and for his family, is not just cause for refusing to testify"); *In the Matter of Grand Jury Investigation (Detroit Police Department Special Cash*

*Fund),* 922 F.2d 1266, 1272 (6th Cir.1991) (recognizing in a contempt action that "despite evidence of reprisals, 'fear for the safety of one's self or others is not a ground for refusing to testify' ") (citation omitted); *United States v. Gomez,* 553 F.2d 958, 959 (5th Cir.1977) (stating that "fear for personal and family safety ... is no defense to the crime of refusing to testify"); *In the Matter of a Witness Before the Grand Jury,* 518 F.2d 1295, 1295 (9th Cir.1975) (recognizing that "[n]o federal court in a reported decision has held that fear of retaliation is sufficient reason to refuse to testify[;] ... [t]o do so ... would mean that virtually every prisoner in the United States, and many millions of people at large, would be freed of the duty to appear and testify before a grand jury").

this case. *In the Matter of Grand Jury Proceedings Empanelled May 1988,* 894 F.2d 881 (7th Cir.1990) (recognizing that duress demonstrated by a palpable imminent danger may serve as a defense to civil contempt). Simply put, Doe's argument that he has demonstrated the presence of a palpable imminent danger is unpersuasive given that no actual or specific threats of violence or otherwise have been made against either himself or any members of his family. A palpable imminent danger sufficient to constitute a defense to civil contempt requires more than mere reference to a country or city's level of drug trafficking and violence. It is also noteworthy that Doe declined the government's offer to participate in the Witness Protection Program in this instance, thus casting doubt on the severity of Doe's stated fear or retaliation. Moreover, to countenance Doe's argument would effectively confer on narco-terrorists in Country A and numerous other countries the power to intimidate and silence witnesses in this country who might otherwise provide information critical to the effective functioning of the grand jury. It would likewise confer on Doe the power to remain silent despite the absence of any specific threats having been made against either himself or his family. Such a result is clearly improper and in the end, a finding of civil contempt, together with the imposition of coercive rather than punitive measures, is warranted.

### III.

Accordingly, for the foregoing reasons, and for good cause,

It is hereby **ORDERED** that Doe is **HELD** in civil contempt based on his persistent refusal to testify before the grand jury.

It is further **ORDERED** that Doe is committed to the custody of the Bureau of Prisons until completion of the current grand jury term, including any extensions thereto, or until he agrees to testify before the grand jury, whichever occurs first.

It is further **ORDERED** that any time served by Doe on this civil contempt matter shall not be credited toward the sentence he is currently serving in the United States District Court for the District of Maryland.

It is further **ORDERED** that the matter will be re-evaluated upon the completion of the current grand jury term, unless Doe agrees to testify prior to such time.

The Clerk is directed to send a copy of this under seal Order to the Marshal's Service, the Bureau of Prisons and all counsel of record.